CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 20 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| PANKAJ K. GARG, | ) | Civil Action No. 7:11-cv-00155 |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| SATYAM COMPUTER SERVICES, LTD., d/b/a MAHINDRA SATYAM, | ) | |
| | ) | By: James C. Turk |
| Defendant. | ) | Senior United States District Judge |

This matter comes before the Court on cross motions for summary judgment. Oral argument was heard on March 15, 2012, and the matter is now ripe for disposition. In accordance with the following Memorandum Opinion, Defendant's motion for summary judgment is **DENIED** and Plaintiff's motion for summary judgment is **DENIED**.

I. **Background**

The dispute before the Court concerns the terms of an employment contract between Plaintiff, Pankaj K. Garg ("Garg"), and Defendant, Satyam Computer Services, Ltd. ("Satyam"). Specifically, the parties dispute the terms of a performance-linked incentive bonus ("Incentive Plan") and how the terms apply to Garg's bonus payment for securing a multi-year information technology services contract valued at approximately $100 million with Nissan North America, Inc. ("Nissan Contract").[1]

---

[1] The contract was signed on February 14, 2006. Plaintiff estimates the total value of the contract at $118,591,919.27, while Defendant estimates the contract value to be approximately $85 million. The parties further dispute how much of the total value of the contract should be attributed to Garg. Garg believes he is entitled to the full $118 million, while Defendant argues Garg was responsible for bringing in $40 million in "order value influenced" for Satyam, under the terms of the Employment Agreement.

Plaintiff alleges that under the terms of his employment contract, which is partly written and partly oral, he is entitled to an Incentive Plan bonus payment of 0.5% of the total value of the Nissan Contract for the life of the contract, or 0.5% of $118,591,919.27. Garg alleges that he was never paid his bonus for collections after fiscal year 2005-2006, and that he is owed approximately $590,000. Defendant argues that, based on the terms of the written employment contract, the Incentive Plan was discretionary and, therefore, Satyam has no legally enforceable obligation to pay Garg any bonus under the Incentive Plan. Defendant further argues that even if the Incentive Plan created a legally enforceable obligation, the terms—whether oral or written—did not provide for payment for the life of the contract, but rather only for fiscal year 2005 – 2006. Accordingly, Satyam maintains it appropriately paid Garg $1,191.65, which represented 0.5% of fiscal year 2005-2006 collections under the Nissan Contract.

Garg began work for Satyam on November 1, 2004. He was hired to work as a Managing Consultant in Satyam's Business Solutions Group ("BSG"). In his role, Garg was responsible for identifying potential clients, meeting with potential clients, and ultimately selling Satyam's offerings. Negotiations to hire Garg commenced in September 2004 between Srinagesh Kumble ("Kumble"), Head of the BSG, and Garg. On October 1, 2004, Garg signed a written employment contract ("the Employment Agreement") with Satyam. Satyam drafted the Employment Agreement. Section 2 of the Employment Agreement stated, in relevant part:

> An amount determined as 10% of the salary actually earned by you from the date of joining Satyam uptil [sic] 31st March 2005 will be payable as Guaranteed Incentive amount on 31st March, 2005. This guaranteed incentive is applicable only for the financial year 2004-05 (i.e. April 2004 – March 2005).
> ...
> You will be eligible to participate in the performance-linked incentive policy in force from April 2005 onwards. From April 2005 onwards, your incentive amount will be determined solely on

2

the basis of your performance appraisal and the performance-
linked incentive policy in force.

Details of the standards applicable to the performance appraisal process are set forth in Section 5 of the Employment Agreement:

> You will be measured on the basis of "Order Value Influenced" –
> i.e. the value of orders you help to create & secure for Satyam.
> ...
> Your target for "Order Value Influenced" will be US § 10 mil. In the first 12 months (first target period) after completion of your induction.
> ...
> Satyam reserves to amend your role, responsibilities and targets from time to time. Such changes will come into force at a time and in a manner communicated to you by Satyam in writing.

Finally, the Employment Agreement also contained a catch-all provision, in Section 17, that provided in relevant part:

> Satyam reserves the right to interpret, change, suspend or terminate any of its benefits, policy plans or programs in accordance with its needs from time to time.

On the same day that Garg signed the Employment Agreement, he received an e-mail from Kumble. The e-mail stated that 'I confirm that the pro-rated bonus we've guaranteed your [sic] for the period from your joining date to March 31, 2005 will be listed in your offer document." Additionally, the e-mail stated:

> Satyam guarantees a bonus of 10% of the base salary you earn from the joining date uptil [sic] March 31, 2005. While a bonus is guaranteed for the mentioned period, I'd like to advise you that you will participate in Satyam's performance appraisal process for this period as well.
> ...
> You will be eligible to participate in Satyam's performance-linked incentive scheme that will be applicable from April 1, 2005 onwards – i.e. the commencement of Satyam's next financial year. This policy will detail how your performance will be recognized and rewarded from the next financial year onwards. We are confident you will achieve performance levels that will merit

incentive rewards in the region of 20%-30% of the base salary that you've indicated as desirable.

Kumble has also stated that at the time the Employment Agreement was signed the Incentive Plan was in the discussion phase only. Kumble Dec. ¶ 8 ("Any bonus applicable after April 2005 had not been approved at that time."); Kumble Dep. 81: 11-13 ("And I explained to him that we did not have a policy in place at that point in time for BSG, but that one would be put together.").

During the course of Garg's employment at Satyam, members of the BSG were told orally about the terms of the Incentive Plan. Garg alleges that meetings took place in January, May, and June 2005. First, Garg asserts that on or about January 24, 2005, Kumble and other Satyam representatives advised him of the terms of the Incentive Policy. See Dkt. No. 20 at 4.[2] Subsequently, there was a similar conversation on or about May 24, 2005. Id. See also Kumble Dep. 154:2-3. Finally, Plaintiff says there was another discussion of the policy on or about June 15, 2005. Id. See also Kumble Dep. 154:11-20. At these meetings Garg alleges he was told that the Incentive Plan payment would be 0.5% of the "Order Value Influenced" for the contracts they helped secure. Garg further alleges that Satyam never stated that the Incentive Plan was limited to fiscal year 2005-2006 or bonus payments under the Incentive Plan were limited to collections in fiscal year 2005-2006. To the contrary, Garg alleges he was told that employees in the BSG would be paid an incentive bonus for the life of the contracts they secured.

Additionally, several e-mails were exchanged between Satyam's management regarding the precise terms of the Incentive Plan. These e-mails were not sent to Garg. On May 10, 2005, GB Prabhat ("Prahbat"), responsible for developing the Incentive Plan, e-mailed Rama Raju

---

[2] Defendant believes it is more likely the January meeting occurred in May. See Dkt. No. 16, at 10 n.48.

4

("Raju"), Satyam's Managing Director at the time, summarizing the terms of the agreement reached for the Incentive Plan. The e-mail stated:

> In a discussion we had some days ago, you have agreed that for BSG team members for the year 2005-06 ... their cash incentives would be governed by the following terms:
> 1. 0.5% of billing each member would account for.
> 2. A cap of 100% of their fixed pay would apply.
> 3. Contribution of BSG would be acknowledged by the collaborating [unit].

Subsequently, on June 2, 2005, Prahbat e-mailed Rama Rao ("Rao") regarding the specifics of the Incentive Plan. The final line of the e-mail stated in all capital and bolded letters: "Please note that this scheme is applicable only for thr [sic] financial year 2005/06." The terms detailed were:

> 1. 0.5% of billing each member would account for. This refers to the revenue that is invoiced and collected during the Financial Year.
> 2. The total incentive would be subject to a cap of 100% of the fixed pay.
> 3. Contribution of BSG would be acknowledged by the collaborating [unit].

An additional e-mail sent on April 27, 2006, from Kumble's to Prabhat and Rao, presented the most complete version of the terms of the Incentive Plan. It stated:

> I'd like to summarize the incentive scheme applicable only to FY2005-06 that has been discussed with you earlier:
> - Incentives are payable for performance against influenced order value targets for BSG associates
> - Influenced order value recognition, extent of recognition, for BSG associates is subject to written (email) confirmation from the relevant Customer Facing Unit or CFU ...
> - Credit for influenced order value will be shared among BSG associates in cases where more than one BSG associate is involved in the order pursuit
> ...
> - Incentive payment will be linked to actual collection against invoices (relating to the influenced order) that were raised during FY2005-06

5

- Gross incentive amount will be calculated at 0.5% of collections relating to influenced orders....

The e-mail concluded by stating "As has been communicated earlier, this incentive scheme is applicable only to FY2005-06.

## II. Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). A summary judgment motion should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Campbell v. Hewitt, Coleman, & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994). Summary judgment should be entered, however, if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Technologies Applications & Service Co., 80 F.3d 954, 958 (4th Cir. 1996).

In a diversity case, to determine whether a particular fact is material, the Court looks to the elements of the various claims and defenses under the applicable state substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The present case is governed by Virginia law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).

## III. Analysis

Satyam argues that Garg cannot establish that Satyam breached the Employment Agreement and, thus, Satyam is entitled to summary judgment. Specifically, Satyam asserts that it was under no legally enforceable obligation to pay the Incentive Plan bonus that Garg seeks

6

because the bonus was discretionary. Satyam further argues that the Employment Agreement is complete and unambiguous and thus parol evidence is not admissible to vary the terms of the agreement. Conversely, Garg argues that the Employment Agreement combined with the orally supplied terms of the Incentive Plan created a legal obligation to pay the Incentive Plan bonus for the life of the contracts influenced. Garg further argues that such obligation could not be cancelled or modified unless the changes were communicated in writing to Garg—something Satyam never did—and, thus, Garg is entitled to summary judgment. Finding that there are disputed material facts in this case, neither party is entitled to summary judgment and the Court denies both the Plaintiff and the Defendant's motions.

Under Virginia law "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). Contract interpretation is generally a matter of law for the court to decide. Williams v. Prof'l Transp. Inc., 294 F.3d 607, 613 (4th Cir. 2002); Gordonsville Energy, L.P. v. Virginia Elec. & Power Co., 512 S.E.2d 811, 816 (Va. 1999).

To determine whether a contract creates a legally enforceable obligation the Court first looks to the plain meaning of the contract. Craig v. Craig, 721 S.E.2d 24, 28 (Va. 2012) (internal citations and quotations omitted) ("The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."). If the terms of a contract are "complete, unambiguous, [and] unconditional" parol evidence is "inadmissible to vary, contradict, add to, or explain the terms of" the contract. Id. at 31. See also Globe Iron Constr. Co. v. First Nat'l Bank of Boston, 140 S.E.2d 629, 633 (Va. 1965) ("[W]here an

7

agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself."). However, the parol evidence rule does not preclude the admission of evidence to supply missing parts or terms of an agreement. Durham v. National Pool Equipment Co. of Va., 138 S.E.2d 55, 59 (Va. 1964); Reed v. Dent, 72 S.E.2d 255, 259 (Va. 1955).

Here, the written Employment Agreement was only partially integrated as it contained no merger clause and the parties clearly contemplated supplementation because, as Kumble acknowledged, the terms of the Incentive Plan were still under discussion when Garg signed the Employment Agreement. See Kumble Dec. ¶ 8; Kumble Dep. 81: 11-13. As such, contrary to Defendant's position, the Court considers the parol evidence put forward by Garg regarding the terms of the Incentive Plan.

At oral argument, Satyam also claimed it was entitled to summary judgment because no matter what was said during the oral conversations between Garg and Kumble those conversations could not rise to the level of a binding contractual obligation because they concerned a policy, rather than a contractual obligation. The Court disagrees. The parol evidence rule does not prohibit the introduction of evidence of oral agreements made subsequent to the execution of a written agreement. Piedmont Co. v. Buchanan, 131 S.E. 793, 795 (Va. 1926). Acknowledging that the Plaintiff faces an uphill battle, the Court finds that it is possible that a rational trier of fact could find that the discussions between Garg and Kumble constituted an oral contract entitling Garg to the approximately $590,000 bonus he claims he is owed.

Having reviewed the record the Court finds that Garg's employment contract was partly written and partly oral. Consequently, what is generally a question of law, contract interpretation, is transformed into a question for the jury because when a contract is a mixed

8

written and oral contract "the admixture of parol and written evidence on the question of the making of a contract that is partly oral takes the question to the jury." 17A Am. Jur.2d Contracts § 171. Specifically, the Court notes the existence of the following disputed issues of material fact for the jury: whether the incentive payment was guaranteed or part of a discretionary policy; whether the incentive payment was only for fiscal year 2005-2006 or for the life of the contract, and whether Garg is entitled to 0.5% of approximately $118 million or 0.5% of $40 million.[3]

## IV. Conclusion

Because there are factual issues in dispute, regarding the terms of Garg's employment contract, such that a reasonable jury could find in either party's favor, the Court cannot grant summary judgment. Accordingly, Defendant's motion for summary judgment is **DENIED** and Plaintiff's motion for summary judgment is **DENIED**. An appropriate order shall issue this day.

ENTER: This 20th day of March, 2012

James C. Turk
Senior United States District Judge

---

[3] This is not an exhaustive list of the disagreements between the parties, but rather summarizes the Court's understanding of the main differences.